

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY MCDORMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 0448 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| OFFICER SMITH, STAR NO. 1824, ) | |
| MICHAEL SANCHEZ, UNKNOWN ) | |
| SERGEANT and CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly McDorman filed a twelve-count amended complaint under 42 U.S.C. § 1983 and state law. Plaintiff alleges that she was seriously injured when her car was struck by a vehicle driven by defendant Michael Sanchez ("Sanchez"), a Chicago Police Department ("CPD") officer. Plaintiff also alleges that pursuant to a custom or practice of the CPD, defendant Officer Smith ("Smith") and other CPD officers responding to the accident conspired to falsify a police report to conceal Sanchez's identity and other information regarding the incident, and wrongfully charged plaintiff with traffic violations. Defendants Smith and the City of Chicago ("City") have filed a motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons explained below, defendants' motion to dismiss is granted in part and denied in part.

## FACTS

For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

Plaintiff Kimberly McDorman is a resident of Cook County, Illinois. Smith and Sanchez are CPD officers. On December 12, 2004, plaintiff and Sanchez were involved in a traffic accident that left plaintiff seriously injured and unconscious. Plaintiff does not allege that Sanchez was on-duty or driving an official vehicle at the time of the accident. Plaintiff alleges that police officers responding to the accident, including Smith and an unknown sergeant ("Responding Officers"), protected the identity of their fellow CPD officer, Sanchez, by falsifying police reports documenting the accident. In particular, the report recorded the identity of the driver of the car that collided with plaintiff's car as "unknown." According to plaintiff, Smith knew that Sanchez had consumed substantial quantities of alcohol but did not include this information in the reports. The Responding Officers issued two traffic violations to plaintiff for traveling the wrong way on a one-way street and disobeying a red light, which were later dismissed.

Plaintiff alleges that Sanchez knew that he could drive with "deliberate indifference" because it is a custom or practice of CPD officers to conspire to falsify documents, including reports and tickets, and to withhold information when a fellow officer is involved in an accident or traffic violation so that fellow officers do not "get into trouble." Sanchez and the Responding Officers also withheld information from the State's Attorney and/or Corporation Counsel for the

City regarding the December 12, 2004, incident because a "code of silence exists" between officers of the CPD to "obstruct the legal process."

## DISCUSSION

In ruling on a motion to dismiss for failure to state a claim, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to the plaintiff. Travel All Over the World, 73 F.3d at 1428. A complaint should not be dismissed for failure to state a claim unless there is no doubt that the plaintiff cannot prove a set of facts that would entitled her to relief based on her claim. Pressalite Corp. v. Matsushita Electric Corp. of America, 2003 WL 1811530, at *2 (N.D.Ill. Apr. 4, 2003).

### I. Constitutional deprivations (Counts I and X)

Plaintiff asserts multiple federal claims under 42 U.S.C. § 1983, as well as violations of her constitutionally protected rights to equal protection of the law and access to court. Defendants argue that plaintiff has failed to allege the deprivation of a constitutional right as required to state each of these claims, and that all of her federal claims should therefore be dismissed. For the reasons discussed below, the court disagrees. Plaintiff has sufficiently alleged constitutional violations, although some of her claims suffer from other deficiencies.

Defendants rely heavily on the Seventh Circuit's opinion in Hill v. Shobe, 93 F.3d 418 (7th Cir. 1996), which is factually similar to the instant case, in support of their argument that she fails to allege a constitutional violation. According to defendants, the Seventh Circuit "unequivocally stated" in Hill that a "traffic accident does not give rise to a constitutional claim." Defendants, however, overstate the preclusive effect of the holding in Hill, and understate the differences between the allegations in Hill and plaintiff's allegations in the instant case.

The plaintiffs in Hill brought a § 1983 claim against police officers and the City of Indianapolis for violation of due process rights, alleging that after Robert Hill was struck and killed by an on-duty police officer driving recklessly, the responding offices conspired to cover up the officer's negligent role in the accident. Id. at 420. The plaintiffs alleged that Indianapolis and its Chief of Police inadequately trained and disciplined their officers, effectively establishing a custom of encouraging them to drive aggressively and at high speeds in non-emergency situations. Id. The Seventh Circuit held that the plaintiffs failed to allege a constitutional violation because they alleged that the officer was driving negligently, rather than with criminal reckless or deliberate indifference, which is a lesser degree of intent that does not violate the due process clause. Hill, 93 F.3d at 421 ("The fact that a public official committed a common law tort with tragic results fails to rise to the level of a violation of substantive due process."). The Hill court also held that because the plaintiffs failed to allege that the accident violated Robert Hill's due process rights, they failed to state a § 1983 conspiracy claim based on the cover-up of the driver's actions. Hill, 93 F.3d at 422 ("For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights."). The plaintiffs' claim that the cover-up denied their right of access to court, which the district court dismissed, was not before the Seventh Circuit.

In the instant case, defendants are correct that Hill defeats some of plaintiff's claims, although not for the reasons asserted by defendants, and incorrect that Hill bars all of plaintiff's federal claims. Defendants characterize Hill as creating an absolute bar against any constitutional claims related to a car collision. This is neither the intent nor the effect of Hill, which merely holds that the plaintiffs in that case had failed to alleged the requisite intent by the

4

driver. 93 F.3d at 421, n. 2 ("The key word is 'accident.' A plaintiff who asserts that he is the deliberate object of state action which caused injury may state a claim under § 1983."). Deliberate indifference, like criminal recklessness, is "a proxy for intent." Hill, 93 F.3d at 421; Wilson v. Williams, 83 F.3d 870, 875 (7th Cir. 1996). Unlike the plaintiffs in Hill, plaintiff here alleges that Sanchez drove with "deliberate indifference," and has therefore alleged the requisite intent to state a constitutional violation.

Plaintiff fails, however, to allege state action by Sanchez, which is the second required element of a § 1983 claim. It is not clear from the amended complaint whether plaintiff alleges that Sanchez was on-duty at the time of the incident. Plaintiff initially defines the "Defendant Officers" as Sanchez, Smith and an unknown sergeant, and alleges that "the Defendant Officers were acting under color of state law" at all times material to the amended complaint. Elsewhere in the amended complaint, however, plaintiff refers to Sanchez as distinct from the Defendant Officers, and plaintiff fails to challenge defendants' statement in the motion to dismiss that she does not allege Sanchez was on duty. Plaintiff has thus failed to allege that Sanchez was acting under color of law at the time of the collision.[1]

Count I alleges a violation of plaintiff's Fourth Amendment rights, and she clarifies in her response that she alleges that her injury in the accident "amounts to seizure." As noted above, however, plaintiff fails to allege that Sanchez, who caused her physical injuries, was acting under

---

[1]The court notes that contrary to defendants' argument, a finding that a defendant acted under color of state law is not foreclosed by the defendant being off-duty at the time of the deprivation of rights. Latuszkin v. City of Chicago, 250 F.3d 502, 505 (7th Cir. 2001); see also Garcia v. City of Chicago, 2003 WL 22175618 (N.D.Ill. Sept. 19, 2003) (off-duty officer liable for constitutional violations). In the instant case, however, plaintiff has failed to allege that Sanchez was off-duty but acting under color of law at the time of the collision.

color of law. Accordingly, the court grants defendants' motion to dismiss Count I.[2] Count X alleges a violation of plaintiff's Fourteenth Amendment rights, but does not identify which actions by which defendants caused the alleged constitutional violation. To the extent that plaintiff is attempting to allege a Fourteenth Amendment violation by Sanchez, she fails to state a claim for the same reasons as apply to Count I. To the extent that plaintiff is attempting to state a Fourteenth Amendment claim based on the conspiracy and cover-up, Count X is redundant of her other counts. Accordingly, the court grants defendants' motion to dismiss Count X.

Hill and defendants' argument that plaintiff fails to allege a constitutional violation does not, however, defeat the remaining federal claims. Plaintiff's claims are not limited to the collision itself but include the subsequent cover-up, which she alleges violated her right to equal protection of the laws (Count XII) and her right of access to court (Count XII). As discussed below, she has sufficiently stated a claim for constitutional violations and therefor she has alleged a constitutional deprivation as required to state a § 1983 conspiracy claim (Count VI) and a Monell claim (Count II).

## II. Right of access to court (Count XII)

Count XII alleges that defendants' actions denied her access to court and her right of redress. Efforts by state actors to impede an individual's access to courts or administrative agencies may provide the basis for a constitutional claim under § 1983. Vasquez v. Hernandez, 60 F.3d 325, 328 (7th Cir. 1995). "Judicial access must be 'adequate, effective, and meaningful,'

---

[2]The court notes that Brower v. County of Inyo, 489 U.S. 593 (1989), does not bar plaintiff's seizure claim because plaintiff alleges deliberate indifference while the plaintiff in Brower alleged negligence only. "A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." Id. at 596 (internal citations omitted). Here, plaintiff alleges deliberate indifference.

and therefore, when police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged." Id. (citations omitted). Thus, a right of access claim may allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." Christopher v. Harbury, 536 U.S. 403, 413 (2002). In such instances, "The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." Id.

To state a right of access claim, plaintiff must allege that she suffered an actual injury. Defendants argues that plaintiff has failed to allege an injury, and cite Vasquez in support. In Vasquez, the Seventh Circuit held that a plaintiff who alleged that her right of access to court was denied by a police cover-up failed to allege actual injury. 60 F.3d at 328. Vasquez is distinguishable from the instant case. First, Vasquez affirmed summary judgment, not dismissal. To survive a motion to dismiss, a plaintiff does not, contrary to defendants' suggestion, have to "show" anything, but merely adequately plead a claim. Second, the plaintiff in Vasquez did not allege that she was prevented from pursuing a tort action in state court or that the value of such an action was reduced by the cover-up. Id. at 329. In contrast, plaintiff in the instant case specifically alleges that "the cover-up and manipulation of evidence" by defendants, as well as the continuing misrepresentations in the police reports, have prevented her from pursuing a personal injury claim in state court. Defendants' arguments that plaintiff has not been injured because she is able to allege that Sanchez was the driver and her traffic citations were dismissed (for reasons not provided to the court) are unpersuasive. Plaintiff has alleged that the cover-up

7

continues to prevent her from filing a viable state court action, which is sufficient at the pleading stage to survive a motion to dismiss her right of access claim.

Accordingly, the court denies defendants' motion to dismiss Count XII.

## II. Equal protection (Count XI)

Count XI of plaintiff's amended complaint alleges that defendants violated the Equal Protection Clause of the Fourteenth Amendment by denying her equal protection of the laws. To state an equal protection claim, plaintiff must allege that: (1) she was a member of a protected class; (2) she was similarly situated to members of the unprotected class; and (3) she was treated differently from members of the unprotected class. Chavez v. Ill. State Police, 251 F.3d 612, 645 (7th Cir. 2001); McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993). Typically, an equal protection claim focuses on the denial of a fundamental right or disparate treatment of persons depending on the claimant's suspect classification. Such claims are examined under a more exacting scrutiny test, while other equal protection claims are examined under the deferential rational basis test. David K. v. Lane, 839 F.2d 1265, 1270 (7th Cir. 1988). In the instant case, plaintiff alleges she is a member of a protected class as a "potential plaintiff to a cause of actions," and that "the Defendant Officers acted with discriminatory intent by treating [plaintiff] differently, trying to cause further injury to plaintiff by illegally generating false evidence against and ticketing plaintiff, specifically due to her status as a person who was involved in a vehicular collision with Officer Sanchez."

Defendants argue that it is "outrageous" for plaintiff to claim that she is a member of a protected class. Although suspect or quasi-suspect classes such as race, gender, and national original are common bases for equal protection and sometimes referred to as "protected classes,"

8

they are not the only viable bases. Courts regularly apply equal protection analysis to plaintiffs who are members of non-suspect or non-quasi suspect classes.[3] See, e.g., Milner v. Apfel, 148 F.3d 812, 813 (7th Cir. 1998) (persons acquitted by reason of insanity); United States v. McKenzie, 99 F.3d 813, 817 (7th Cir. 1996) (felons). Rather than barring an equal protection claim altogether, the failure to allege membership in a suspect class or deprivation of a fundamental right results in the application of a lesser standard of scrutiny.[4] Milner, 148 F.3d at 815-16. ("[T]he orthodox rule is that rational basis is the proper standard for deciding equal protection cases unless the plaintiff falls within a handful of special classes - racial minorities for example, or aliens, or persons born out of wedlock, or women..."); McKenzie, 99 F.3d at 817 (because felons are not a protected class, only irrational discrimination against them would violate the equal protection clause). In the instant case, plaintiff has sufficiently alleged that she is a member of definable class, and that she was subject to disparate treatment based on her status.

Accordingly, defendants' motion to dismiss Count XI is denied.

---

[3] The court notes that although "suspect class" and "protected class" are sometimes used synonymously, the case law is clear that, diction aside, a plaintiff need not be a member of a certain kind of class to state an equal protection claim. That is, allegations of membership in a definable class and disparate treatment are sufficient, as indicated by the courts' regular application of the rational review, equal protection analysis in such cases.

[4] Although the court need not address the proper degree of scrutiny at this point in the litigation, it notes that access to court may be considered a fundamental right, subjecting deprivations of this right to strict scrutiny. See Bounds v. Smith, 430 U.S. 817, 828 (1977); Zehner v. Trigg, 133 F.3d 459, 464 (7th Cir. 1997).

### III. Conspiracy (Count VI)

Count VI of plaintiff's amended complaint asserts a § 1983 conspiracy claim, alleging that the post-collision cover-up violated plaintiff's constitutional rights. Defendants argue that because plaintiff has failed to allege that the collision amounted to a constitutional deprivation, she cannot state a claim for a conspiracy to deprive her of her constitutional rights. Although plaintiff has failed to state constitutional claims based on the collision itself, plaintiff has stated claims for other constitutional deprivations, as discussed above.

Defendants also argue that plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. Under the doctrine, employees of a corporation who jointly pursue its lawful business do not become "conspirators" when acts within the scope of their employment are said to be discriminatory or retaliatory. Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 632 (7th Cir. 1999), citing Wright v. Illinois Dep't of Children and Family Servs., 40 F.3d 1492, 1508 (7th Cir. 1994). The Seventh Circuit has not determined whether the doctrine extends to § 1983 claims. Defendants concede that there is "some conflict of authority" in this district, but assert that the majority of judges, including this court in Tabor v. City of Chicago, 10 F. Supp. 2d 988, 994 (N.D.Ill. 1998), have held that the doctrine applies to § 1983 claims. The majority of these cases, including Tabor, did not involve police misconduct. In recent years several judges in this district have refused to apply the doctrine to such allegations. Howard v. City of Chicago, 2004 WL 2397281, at * 12 (N.D.Ill. Oct. 25, 2004) (Anderson, J.); Newsome v. James, 2000 WL 528475, at * 15 (N.D.Ill. Apr. 26, 2000) (Plunkett, J.); Northen v. City of Chicago, 1999 WL 342411, at *4 (N.D.Ill. May 17, 1999) (Holderman, J.); Salto v. Mercado, 1997 WL 222874, at *1 (N.D.Ill. Apr. 24, 1997) (Zagel, J.).

The court agrees with these cases that the intracorporate conspiracy doctrine does not shield defendants from § 1983 conspiracy claims based on the kind of police misconduct alleged here. As Judge Plunkett noted in Newsome, "the intracorporate conspiracy doctrine was created to shield corporations and their employees from conspiracy liability for routine, collaborate business decisions that are later alleged to be discriminatory." 2000 WL 528475, at *15. Like the cases cited above, the police misconduct alleged here does not fit that mold because conspiracy and cover-up are not the product of routine police department decision-making. Rather, it is, as Judge Zagel noted, "a classic case of conspiracy" in which a "number of officers took concerted action...to harm a single individual." Salto, 1997 WL 222874, at *1. Plaintiff's § 1983 claims are therefore not barred by the doctrine of intracorporate conspiracy.

Accordingly, the court denies defendants' motion to dismiss Count VI.

**IV.  Monell (Count II)**

Count II of plaintiff's amended complaint asserts a claim against the City under Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-91 (1978), alleging that there is a long-standing and unchecked custom and practice among CPD officers and supervisors to conspire to protect their fellow officers involved in traffic accidents. According to plaintiff, the resulting "code of silence" obstructs the legal process by suppressing honest information regarding acts of misconduct. To state a Monell claim against a municipality, a plaintiff must show that the deprivation of his constitutional rights was caused by some official custom or policy of the municipality. Id.

Again, defendants argue that plaintiff's Monell claim must be dismissed because she fails to allege an underlying constitutional violation. See City of Los Angeles v. Heller, 475 U.S. 796,

799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the department regulations might have *authorized* the [actions that would have inflicted the constitutional violation] is quite beside the point.").[5] As discussed above, however, although plaintiff fails to allege that the collision violated her constitutional rights, she has sufficiently alleged that the cover-up violated her constitutional right of access to court and to equal protection of the laws.

The question then, which defendants do not address in their brief, is whether plaintiff sufficiently alleges that the constitutional deprivations were caused by some official custom or policy of the municipality. McCormick v. City of Chicago, 230 F.3d 319, 323-24 (7th Cir. 2000). Plaintiff alleges that it was the custom and practice of CPD officers, supervisors, and other City employees to cover up accidents and traffic violations involving officers. Plaintiff asserts that the custom and practice "has gone unchecked" for a "significant period of time," and that as a result CPD officers recognize that they will not be punished for their involvement in traffic collisions or in the subsequent cover-up. In particular, plaintiff alleges that City supervisors fail to: (1) properly discipline officers who falsify police reports with regard to police officers who are involved in traffic violations; (2) properly investigate vehicular collisions and traffic violations caused by CPD officers; and (3) take proper remedial action against CPD officers who falsify reports concerning traffic violations by CPD officers. Plaintiff also alleges that City

---

[5]The court notes that plaintiff mischaracterizes the holding of Gibson v. City of Chicago, 910 F.2d 1510 (7th Cir. 1990), which did not hold that a Monell claim can survive absent a constitutional violation. The Gibson court merely held that the district court judge had prematurely granted summary judgment regarding Monell liability when the plaintiff had been limited to discovery only on the color of law issue. Indeed, the Seventh Circuit specifically noted that it was not offering an "opinion on the underlying merits of [the plaintiff's] municipal liability claim." Id. at 1522.

12

supervisors falsify police reports and tickets involving CPD officers to insure that the officers will not be given a traffic citation or punished.

Plaintiff has sufficiently alleged municipal liability based on a custom or practice that caused a deprivation of her constitutional rights. Accordingly, the court denies defendants' motion to dismiss Count II.

## V.     State law claims

Defendants do not directly challenge plaintiff's state law claims, other than to assert that the they are shielded from liability for any claim of negligence by the Local Governmental and Governmental Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/1-101. The Tort Immunity Act states, "A public employee is not liable for his act or omission in the execution of the enforcement of any laws unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. Defendants do not specify which of plaintiff's state law claims the Tort Immunity Act applies to, and the court cannot identify one to which it does. None of plaintiff's state law claims allege negligence by an employee while enforcing the laws. Count IX is the only count that alleges negligence, but it is asserted against Sanchez only, and plaintiff does not allege that Sanchez was enforcing the laws at the time of the collision.

Accordingly, the court denies defendants' motion to dismiss Counts III, IV, V, VII, VIII, and IX.

## CONCLUSION

For the reasons stated above, the court grants the defendants' motion to dismiss Counts I and X, and denies the defendants' motion to dismiss Counts II through IX, XI, and XII. The matter is set for a hearing on status on August 24, 2005, at 9:00 a.m, at which time the parties are directed to present a final discovery plan.

**ENTER:** **August 2, 2005**

Robert W. Gettleman
United States District Judge