**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KIMBERLY MCDORMAN and <br> JOSEPH PIEKIELKO, <br><br> Plaintiffs, <br><br> v. <br><br> OFFICER KEVIN SMITH, MICHAEL <br> SANCHEZ, SGT. DANIEL MCDONALD, <br> LT. DENNIS WALSH, KELLY HJELLUM, <br> KARI HJELLUM, DONALD LEWIS, MICHAEL <br> SHIELDS, CHRIS DINGLE, JOSE TORRES, <br> GABRIELLE KRUPA, BRIAN RIVERA and <br> CITY OF CHICAGO, <br><br> Defendants. | No.  05 C 0448 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Kimberly McDorman ("McDorman") and Joseph Piekielko ("Piekielko") have filed a thirteen-count corrected third amended complaint[1] under 42 U.S.C. § 1983 and state law. Plaintiffs allege that McDorman was seriously injured when the car she was driving, which is co-owned by Piekielko[2], was struck by a vehicle driven by defendant Michael Sanchez ("Sanchez"), an off-duty Chicago Police Department ("CPD") officer. Plaintiffs allege that Sanchez was intoxicated at the time of the accident. Plaintiffs also allege that pursuant to a custom or practice of the CPD, CPD officers responding to the accident conspired to falsify a police report to

---

[1] Plaintiffs filed their third amended complaint on March 3, 2006. On April 11, 2006, the court granted plaintiffs' motion to file a corrected third amended complaint.

[2] In paragraphs 17 and 18 of the corrected third amended complaint, plaintiffs refer to Piekielko's vehicle. In paragraph 79, plaintiffs allege that they were joint owners of the vehicle. McDorman and Piekielko each assert a vehicular damage claim.

conceal Sanchez's identity and other information regarding the incident, and wrongfully charged plaintiff with traffic violations.

In Count I, McDorman asserts a § 1983 claim against the City of Chicago ("City") under Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-91 (1978). Counts II and III assert indemnification claims against the City under 745 ILCS 10/9-102, and Counts IV and V assert respondeat superior claims against the City. McDorman asserts a malicious prosecution claim in Count VI and a conspiracy claim in Count VII against the individual defendants,[3] and a vehicular collision claim against Sanchez in Count IX. Piekielko asserts a vehicular damage claim against Sanchez in Count X. Counts XI through XIII assert § 1983 claims against all defendants, for access to state court and equal protection. Plaintiffs seek punitive and compensatory damages.

In its Memorandum Opinion and Order dated August 2, 2005, the court granted in part and denied in part Smith and the City's motion to dismiss McDorman's amended complaint[4], filed May 5, 2005. McDorman v. Smith, 2005 WL 1869683 (N.D.Ill. Aug. 2, 2005). Plaintiffs filed their corrected third amended complaint on April 11, 2006. On May 1, 2006, Sanchez filed a motion to dismiss the claims made against him in the third amended complaint[5] pursuant to

---

[3]In their response to Sanchez's motion to dismiss, plaintiffs withdrew Count VIII, which asserted an abuse of process claim against all defendants.

[4]Although McDorman alleges that she jointly owned the vehicle with Piekielko, he was not named as a plaintiff until the second amended complaint, filed October 27, 2005.

[5]Sanchez attached a copy of the third amended complaint filed on March 3, 2006, rather than the corrected third amended complaint filed on April 11, 2006. It does not appear that the differences between the two complaints affect Sanchez's arguments, and Sanchez has elected not to file a reply in support of his motion, in which he would have had the opportunity to address any material differences between the complaints.

Fed. R. Civ. P. 12(b)(6), 8(a), and 9(b). In the alternative, Sanchez seeks a more definite statement under Rule 12(e). Plaintiffs filed a response to Sanchez's motion to dismiss on May 12, 2006. Sanchez did not file a reply in support of his motion. For the reasons discussed below, Sanchez's motion to dismiss is granted in part and denied in part.

**FACTS**

For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). The following facts are those relevant to the instant motion only.

Plaintiffs Kimberly McDorman and Joseph Piekielko are residents of Cook County, Illinois. Defendants Kevin Smith ("Smith"), Sergeant Daniel McDonald ("McDonald"), Lieutenant Dennis Walsh ("Walsh"), Michael Shields ("Shields"), Chris Dingle ("Dingle"), Jose Torres ("Torres"), Gabrielle Krupa ("Krupa"), and Brian Rivera ("Rivera") (collectively, "Responding Officers"), and Sanchez, are CPD officers.[6] Defendant Donald Lewis ("Lewis"), works for the City as an investigator for the Office of Professional Standards. Defendants Kelly and Kari Hjellum (the "Hjellums") are residents of Illinois and were passengers in the car driven by Sanchez.

---

[6]The court notes that certain allegations in the corrected third amended complaint create confusion by imprecisely lumping Sanchez with the other officers at the scene. Plaintiffs define all defendant officers, including Sanchez, as"Defendant Officers" in the introductory paragraph of the corrected third amended complaint. Plaintiffs parenthetically exclude Sanchez from some allegations against the Defendant Officers, further indicating that he is included in the general definition. In the fourth paragraph of the complaint, however, plaintiffs do not include Sanchez in "Defendant Officers." For the purposes of this motion, the court will assume that "Defendant Officers" includes Sanchez. In the interest of clarity, the court's discussion distinguishes Sanchez from the Responding Officers, who were the on-duty officers at the accident scene.

On December 12, 2004, Sanchez, who was off-duty, was involved in a traffic accident with plaintiff at the intersections of LaSalle and Superior streets in Chicago, Illinois. Plaintiff was seriously injured and the vehicle she was driving sustained extensive damages. Piekielko was an owner of McDorman's vehicle. Immediately prior to the accident, plaintiff was traveling northbound on LaSalle, through a green light at the intersection. Sanchez was driving eastbound on Superior, and ran a red light while speeding. The Hjellums were passengers in the vehicle driven by Sanchez. Sanchez and the Hjellums spoke to paramedics at the scene of the accident, but none admitted to being the driver of the vehicle. The paramedic who examined Sanchez after the collision noted that he smelled heavily of alcohol. The paramedics who examined the Hjellums did not record any reference to alcohol.

The Responding Officers arrived at the scene of the accident. The Responding Officers spoke to Sanchez, and noticed or learned that Sanchez smelled of alcohol and/or was under the influence of alcohol. Smith spoke to witnesses about the accident, and prepared a post-occurrence police report. The police report did not document the presence of the other Responding Officers at the scene. The police report states that, pursuant to witness observations, McDorman traveled westbound on Superior and struck the vehicle containing the Hjellums and Sanchez. No other police reports were generated regarding the accident. Smith's report indicated that more than one witness observed the accident, but only recorded the name of one witness, Nicolas Kern ("Kern"). Smith did not speak to Kern. Prior to writing his report, Smith was aware that all occupants of the two vehicles were transported to the emergency room, that McDorman was unconscious for a period of time, and that there was significant property damage

4

to both vehicles. Smith also learned that Sanchez was the driver of the vehicle that struck the vehicle being driven by McDorman.

Officer Walsh spoke to Sanchez after the collision prior to and/or while Sanchez was at John Stroger Hospital. Walsh noticed that Sanchez was under the influence of and/or smelled of alcohol, and that Sanchez was the driver of the vehicle that struck the vehicle driven by McDorman. Plaintiffs allege that all of the Responding Officers became aware that Sanchez was inebriated, that he was the driver of the vehicle that collided with the car driven by McDorman, and that Sanchez was at fault for the collision.

The police report indicated that the driver of the vehicle that struck McDorman's vehicle was unknown, and that McDorman was at fault by driving the wrong way down Superior, a one-way, eastbound street. The report did not indicate that Sanchez was under the influence of alcohol, speeding, and ran a red light. Plaintiffs allege that the Responding Officers and Sanchez "acted with wilful, wanton misconduct and reckless disregard for the rights of plaintiffs and also in collusion, conspiracy and by agreement, by facilitating, contributing and/or participating in the generation" of a false police report. Plaintiffs asserts that the Hjellums acted in concert with the Responding Officers and Sanchez to falsify information regarding the driver of the vehicles, and to intentionally cover up the identity of the driver and misrepresent the facts of the accident. Plaintiffs allege that Sanchez, the Responding Officers, and the Hjellums withheld information from the State's Attorney and/or Corporation Counsel for the City regarding the accident.

Plaintiffs allege that Sanchez and the Responding Officers engaged in a conspiracy by "partaking in specific communications designed to cause" the false police report, and that these

conversations occurred on the date of the accident. According to plaintiffs, there is a "code of silence" between CPD officers "so as to obstruct the legal process, to wit, to prevent honest information from coming forward relative to acts of misconduct." Plaintiffs allege a CPD custom and/or practice of withholding and falsifying information in police reports to protect fellow CPD officers, and that this practice is facilitated by the lack of legitimate investigations into misconduct by CPD officers.

As a result of the accident, McDorman was issued two traffic violations for traveling the wrong way on a one-way street and disobeying a red light. The Hjellums spoke to the assistant state's attorney who was prosecuting the traffic tickets against McDorman and appeared at the traffic citation hearing. Smith also appeared at the hearing. Sanchez did not appear at the hearing. The charges against McDorman were dismissed.

## DISCUSSION

In ruling on a motion to dismiss for failure to state a claim, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to the plaintiff. Travel All Over the World, 73 F.3d at 1428. A complaint should not be dismissed for failure to state a claim unless there is no doubt that the plaintiff cannot prove a set of facts that would entitled her to relief based on her claim. Pressalite Corp. v. Matsushita Electric Corp. of America, 2003 WL 1811530, at *2 (N.D.Ill. Apr. 4, 2003).

**I.     Section 1983 civil conspiracy claims (Counts XI through XIII)**

Counts XI through XIII assert claims under 42 U.S.C. § 1983, alleging a civil conspiracy between all individual defendants that deprived plaintiffs of their constitutional rights. Count XI alleges that defendants violated McDorman's rights under the Equal Protection Cause. Counts

XII and XIII allege that defendants violated plaintiffs' federal right of access to state court. In its August 2, 2005, Memorandum Opinion and Order, this court denied Smith and the City's motion to dismiss plaintiffs' constitutional claims. Because at that time Sanchez had only recently been served, the instant motion is his first opportunity to attack plaintiffs' claims.

Sanchez first argues generally that plaintiffs have failed to state a § 1983 civil conspiracy claim because plaintiffs do not allege that he was acting under color of law at the time of the accident and the alleged cover-up. Sanchez also argues that plaintiffs have failed to allege the elements of a conspiracy claim against him with the "specificity" required by plaintiffs' cover-up allegations.

To state a § 1983 claim, a plaintiff must allege that she was deprived of her constitutional rights by a person acting "under the color of state law." Brokaw v. Mercer County, 235 F.3d 1000, 1016 (7th Cir. 2000). A defendant's "mere status as a policeman does not render all of his acts under color of state law." Gibson v. City of Chicago, 910 F.2d 1510, 1516 (7th Cir. 1990). The court previously noted that in her amended complaint, McDorman failed to allege that Sanchez was acting under color of law at the time of the accident. 2005 WL 1869683, at * 3. The court also noted, however, that a finding that a defendant acted under color of state law is not foreclosed by the defendant being off-duty at the time of the deprivation of rights. Id. at *3 n.1 (citing Latuszkin v. City of Chicago, 250 F.3d 502, 505 (7th Cir. 2001); see also Garcia v. City of Chicago, 2003 WL 22175618 (N.D.Ill. Sept. 19, 2003) (off-duty officer liable for constitutional violations)).

In the instant case, plaintiffs allege that Sanchez was off-duty at the time of the accident, but was "at all times material to this complaint..acting under color of state law, ordinance, and/or

7

regulation, statutes, custom, and usages of the [City]." Cf. Latuskin, 250 F.3d at 506 (affirming dismissal for failure to state a claim where plaintiff did not allege defendant acted under color of law). The court notes that plaintiffs do not explain how Sanchez was acting under the color of state law at the time of the accident, when he was off-duty, not in uniform, and driving a non-police vehicle. This argument, however, is premature on a motion to dismiss. In addition, plaintiffs' federal claims extend beyond the accident itself to the alleged post-accident cover-up and conspiracy. The court cannot find no set of facts under which Sanchez participated in the alleged conspiracy under color of state law. Plaintiffs have thus sufficiently alleged that Sanchez was acting under color of law.

Sanchez's second general argument, that plaintiffs' allegations of a civil conspiracy lack the required specificity, is also unpersuasive. To establish a § 1983 claim through a civil conspiracy theory, plaintiffs must demonstrate that: (1) defendants had an express or implied agreement to deprive plaintiffs of their constitutional rights; and (2) plaintiffs were deprived of their constitutional rights by defendants' overt actions in furtherance of the agreement. Williams v. Seniff, 342 F.3d 774, 785 (7th Cir. 2003). Sanchez's attack focuses on the first element. He argues that plaintiffs fail to allege a "meeting of the minds" between Sanchez and the other individual defendants.

There is no requirement in federal suits of pleading facts or the elements of a claim, with the exceptions listed in Fed. R. Civ. P. 9. See, e.g., Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (plaintiff must allege "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."). The Seventh Circuit applied this standard to a conspiracy claim in Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir. 2002). The plaintiff in

8

Walker alleged that prison officials and a former state governor conspired to keep him and other prisoners incarcerated beyond their mandatory release date. Id. The Seventh Circuit reversed the district court's dismissal for a failure to state a conspiracy claim. The Walker court noted that Rule 9 was inapplicable, and held that "it is enough in pleading a conspiracy to merely indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." Id. The Walker court also distinguished its holding from its earlier holding in Ryan v. Mary Immaculate Queen Center, 188 F.3d 857, 859-60 (7th Cir. 1999), which Sanchez cites in support of his specificity argument, because the plaintiff in Ryan "did not so much as hint at what role he might have played or agreed to play" in the alleged conspiracy. Walker, 288 F.3d at 1007; see also, Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003) (recognizing that Ryan cannot be read to require that a complaint alleging conspiracy under § 1983 contain more than notice of time, scope, and parties involved).

The other cases cited by Sanchez are also distinguishable. Case v. Milewski, 327 F.3d 564 (7th Cir. 2003), involved an alleged conspiracy between federal officers, not acting under the color of state law, and state officials. The plaintiff in Case alleged that he was unlawfully harassed and seized by federal Naval police officers only, and failed to allege an agreement between the federal officers and state officials who charged the plaintiff with crime under Illinois law, but were not present during the incident. Id. at 566-68. In the instant case, by contrast, plaintiffs allege that all defendants were present at the scene of the accident and conspired on that day "by partaking in specific communications designed to" deprive plaintiffs of their constitutional rights by concealing the true facts of the accident. Quinones v. Szorc, 771 F.2d 289, 190 (7th Cir. 1985), and Moore v. Marketplace Restaurant, Inc., 745 F.2d 1336, 1352-53 (7th

9

Cir. 1985), are out-dated and distinguishable. In the instant case, plaintiffs allege that Sanchez conspired with the other individual defendants on the date of the accident to cover up Sanchez's role and his intoxicated state. Under Walker, plaintiffs have sufficiently alleged a conspiracy of which Sanchez was a member.

Accordingly, plaintiffs have sufficiently alleged a civil conspiracy under § 1983. The question, then, is whether plaintiffs have sufficiently alleged the elements of their underlying constitutional claims. As discussed below, the court concludes that they have not.

## II. Equal Protection (Count XI)

To state an equal protection claim under § 1983, a plaintiff must allege that (1) she is a member of a protected class; (2) she was similarly situated to members of the unprotected class; (3) she was treated differently from members of the unprotected class; and (4) the defendant acted with discriminatory intent. McPhaul v. Board of Comm'rs, 226 F.3d 558, 564 (7th Cir. 2000). Sanchez challenges the first and fourth elements.

McDorman alleges that she is a member of a protected class. McDorman alleges that she "is/was a potential plaintiff to a state court cause of action, a victim of criminal conduct of defendant Sanchez, and a potential criminal complainant to criminal conduct that should have lodged against defendant Sanchez, but was not due to the cover-up." McDorman asserts that on the basis of her class membership, she was treated differently than other similarly situated people involved in accidents with non-police officers. McDorman alleges that Sanchez and the Responding Officers "acted with discriminatory intent by treating [McDorman] differently, trying to cause further injury to [McDorman] by generating false evidence against her, and contributing, facilitating, and/or proximately causing the ticketing of [McDorman]." McDorman

also alleges that Lewis acted with discriminatory intent by "perpetuating the cover-up and/or hiding of [sic] information relative to the acts of misconduct" by the other individual defendants.

Although McDorman's equal protection claim is a far-cry from the tradition cause of action based on gender, racial, or religious animus, this court noted in its last opinion that courts may apply equal protection analysis to plaintiffs who are members of non-suspect or non-quasi suspect classes, and held that McDorman had sufficiently alleged an equal protection claim. 2005 WL 1869683, at *5. Sanchez, who did not participate in the last round of briefs, raises new arguments in his motion to dismiss, and asks the court to reconsider its earlier equal protection ruling. After reviewing additional authorities cited by Sanchez and plaintiffs' latest complaint, and upon further review of the caselaw, the court finds that plaintiffs have failed to state a right of access claim against any defendant. See Avita v. Metropolitan Club of Chicago, 49 F.3d 1219, 1227 (7th Cir. 1995) (a judge may reexamine his earlier ruling...if he has conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not causes undue harm to the party that had benefit[ted] from it.").

Sanchez argues that McDorman fails to state a claim because she is not a member of a "historically disadvantaged group," but this argument is based on an overstatement of the holding in Sherwin Manor Nursing Center, Inc. v. McAuliffe, 37 F.3d 1216, 1220 (7th Cir. 1994) (noting that a § 1983 equal protection claim must allege discrimination based on a plaintiff's "identification with a particular (presumably historically disadvantaged) group."). Contrary to Sanchez's argument, Sherwin did not hold that membership in a historically disadvantaged is a requirement of all equal protection claims. Nevertheless, Sherwin indicates that claims such as

11

plaintiff's, which are not based on a readily apparent or easily definable class, are subject to increased scrutiny.

Sanchez next argues that a class cannot be defined simply as a group of victims of a defendant's tortuous action. In support of this argument, Sanchez cites <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 269 (1993), which held that "women seeking an abortion" is not a qualifying class for the purposes of denial of interstate travel under 28 U.S.C § 1985(3) interstate travel claim. The <u>Bray</u> noted that such a "definitional ploy" would "convert the statute into a 'general federal tort law.'" <u>Id.</u> Plaintiff's attempt to shoe-horn her tort claims into a
§ 1983 equal protection action by defining a class based on her status as a victim of alleged tortious conduct is similarly impermissible. Sanchez also cites <u>Brown v. City of Chicago</u>, 573 F.Supp. 1375, 1380 (D.C.Ill. 1983), which rejected the plaintiff's attempt to assert a denial of an equal protection claim under § 1985(3). The plaintiff in <u>Brown</u> alleged that a conspiracy to charge him with disorderly conduct was undertaken against him "as one of a class of citizens whom police officers have committed acts of misconduct." <u>Id.</u> at 1381. The court held that the plaintiff had not alleged class-based discrimination or animus. <u>Id.</u>.

Plaintiffs fail to respond to Sanchez equal protection class arguments, relying on this court's previous denial of the earlier motion to dismiss. Sanchez, however, raises new arguments and authorities, and since this court denied the earlier motions to dismiss plaintiffs have significantly expanded and amended McDorman's claim regarding her class membership, which is now focus more clearly based on her status as a victim of Sanchez's tortious conduct. Sanchez's arguments reveal a distinction between the instant case and <u>Milner v. Apfel</u>, 148 F.3d

812 (7th Cir. 1998), and United States v. McKenzie, 99 F.2d 813, cited in this court's earlier opinion. The plaintiffs in Milner and McKenzie were members of classes that were not defined by the defendants' conduct, but by the plaintiffs' pre-existing status as, respectively, persons acquitted by reason of insanity and felons. Sanchez's argument that McDorman has not alleged membership in a protected class as required to trigger analysis under the Equal Protection Clause is persuasive. Accordingly, the court grants Sanchez's motion to dismiss Count XI. Because Count XI fails to state an equal protection claim against any of the defendants, the court amends its August 2, 2005, ruling and dismisses Count XI as to all defendants.

Because the court grants Sanchez's motion to dismiss Count XI, it need reach his other arguments regarding McDorman's equal protection claim.

### III. Access to court

Counts XII and XIII allege that defendants violated plaintiffs First and Fourteenth Amendment rights "in that [plaintiffs'] right of access in state court is hampered, due to the cover up and manipulation of evidence." This court held in its previous opinion that McDorman had stated a right of access claim. 2005 WL 1869683, at *4. As with plaintiffs' equal protection claim discussed above, after reviewing additional authorities cited by Sanchez and plaintiffs' latest complaint, and upon further review of the caselaw, the court finds that plaintiffs have failed to state a right of redress claim against any defendant. For the reasons discussed below, the court dismisses Counts XII and XIII.

Sanchez cites the Supreme Court's holding in Christopher v. Harbury, 536 U.S. 403, 413 (2002), which held that access-to-court claims fall into two categories. The first category contains "forward-looking" claims that systemic official action frustrates a plaintiff in preparing

13

and filing suits at the present time, where the suit could be pursued once the frustrating condition has been removed. Id. The second covers claims of specific cases that cannot be tried, no matter what official action may be taken in the future, which the Supreme Court characterizes as "backward-looking claims." Id. To state a backward-looking claim, "the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Id.

It is unclear from the corrected third amended complaint whether plaintiffs allege a forward or backward looking right of access claim because it is ambiguous whether plaintiffs' state court causes of action remain viable. For example, plaintiffs allege that McDorman "is/was a potential plaintiff to a state court cause of action." Plaintiffs clarify in their brief, however, that they "have alleged that the right of redress, in state court, has been foreclosed," indicating that they are attempting to assert a backward-looking right of access claim because they allege that the state action cannot be brought. Under either category of right of redress claims, however, plaintiffs have failed to allege that they were or are prevented from filing an action in state court.

Courts have repeatedly distinguished right of redress cases where the plaintiffs, often the estate of the deceased, had no personal knowledge of the incident that gave rise to the alleged cover-up, from cases where the plaintiff was a participant in the incident. See Thompson v. Boggs, 33 F.3d 847, 852 (7th Cir. 1994) (plaintiff was not deprived of meaningful access to the courts because "he was personally involved in the incident" and the facts known to him "were sufficient to enable him to file the instant lawsuit."); Lyons v. Adams, 257 F.Supp.2d 1125, 1135 (N.D.Ill. 2003) (firsthand witness to attack was not prevented from seeking effective and

meaningful legal redress). Like the plaintiffs in Thompson and Lyons, McDorman was present at the scene of the incident that was allegedly covered up, and she presumably knew that Piekielko was the co-owner of the vehicle that she was driving. It is true that McDorman became unconscious for a period of time after the accident and was initially unable to identify all of the officers involved, but she learned their names through discovery in the instant action, which supports Sanchez's argument that she would have discovered the same information after filing a state court case. See Chico v. Miller, 2005 WL 2171156, at * 3 (N.D.Ill. Aug. 31, 2005) (granting motion to dismiss right of access claim where plaintiff could have learned identity of officer who allegedly struck him through discovery in state court action).

Plaintiffs' allegations and the procedural history of the case controvert their assertion that they did not have enough information to bring a state law claim shortly after the accident. McDorman filed her initial complaint on January 24, 2005, alleging that Sanchez was the driver of the car, that other CPD officers, including Smith, conspired with Sanchez to cover up the accident, and that the police report, which McDorman quoted in her complaint, was "falsified." McDorman was thus clearly aware of the essential facts necessary for her state-law tort claims less than two months after the accident. During the next year, she repeatedly amended her pleadings, adding further detail regarding her tort claims. Sanchez cites Love v. Bolinger, 927 F.Supp. 1131, 1139 (S.D.Ind. 1996), which dismissed the plaintiff's right of access claim because the federal complaint alleging the underlying tort and cover-up was filed within five months of tort. The Love court noted that this "leaves no doubt that plaintiffs were not hindered in bringing their lawsuit to vindicate their rights." Id. Plaintiffs fail to address Love in their

response.  Love is analogous to the instant case, which was filed less than two months after the accident, and plaintiffs' right of access claim is similarly deficient.

Other facts alleged by plaintiffs further undermine her argument that she was denied access to state court.  McDorman failed to attach a copy of the police report to any of the complaints, but the court is permitted to consider the copy attached to Sanchez's motion to dismiss because the complaints refer to the report and quote from it.  See Wright v. Associated Ins. Companies, Inc., 29 F.3d 1244, 1278 (7th Cir. 1994) (court may consider document submitted in support of motion to dismiss where plaintiff quoted from and relied on the document in support of his claims).  Although the driver is listed as "unknown," the police report states that the Hjellums and Sanchez were the occupants of the car that collided with McDorman's vehicle.  Moreover, plaintiffs allege that the Hjellums and Smith appeared at her traffic citation hearing, which occurred prior to the filing of the complaint on January 26, 2005.  The court does not understand, and plaintiffs do not explain, what prevented them from filing their state law tort claims at the time McDorman filed the federal complaint.  Well within the two-year statute of limitations for personal injury claims in Illinois, they had the police report in hand, knew that name of at least one of the Responding Officers, and had McDorman's first-hand account of the accident.

Accordingly, the court grants Sanchez's motion to dismiss the right of access claims, Counts XII and XIII.  Because Counts XII and XIII fail to state a right of access claim against any of the defendants, the court amends its August 2, 2005, ruling and dismisses Counts XII and XIII as to all defendants.

**IV.   State law claims**

Sanchez argues that Count IV fails to state a claim for malicious prosecution under Illinois law[7] and that the court should decline to exercise supplemental jurisdiction over plaintiffs' vehicular damage claims in Counts IX and X[8].

Under Illinois law, to state a claim for malicious prosecution, a plaintiff must plead: (1) the commencement or continuation of a prior criminal or civil proceeding; (2) a termination "on the merits" of the prior proceeding in a manner indicative of the innocence of the plaintiff; (3) lack of probable cause for the prior proceeding against the plaintiff; (4) malice; and (5) proximate damages. Joiner v. Benton Community Bank, 82 Ill.2d 40, 45 (1980); see also, Sneed v. Rybicki, 146 F.3d 478, 480-81 (7th Cir. 1998). Sanchez challenges the second element only.

McDorman alleges that she was issued two traffic citations on the date of the incident, that there was only one traffic citation hearing regarding the tickets, and that she "prevailed at the traffic citation hearing in that the charges were dismissed." Sanchez argues that McDorman fails to include "any allegations that a termination of the underlying charges against McDorman was made." Sanchez cites two Illinois Appellate Court cases, Sutton v. Hofeld, 118 Ill. App. 3d 65 (1st Dist. 1983), and Savage v. Seed, 81 Ill. App. 3d 744 (1st Dist. 1990), which hold that a dismissal by a prosecutor does not operate as a favorable termination under Illinois law. Sutton

---

[7]Contrary to plaintiffs' assertion in their response brief, Illinois state law applies to plaintiffs' state law claims over which a federal court exercises supplemental jurisdiction.

[8]Sanchez also challenges Count VII (abuse of process), which plaintiffs have withdrawn.

17

and Savage, however, were abrogated by the Illinois Supreme Court's holding in Cult Awareness Network v. Church of Scientology, 177 Ill.2d 267 (1997).

Sanchez argues that the entry of a nolle prosequi order is required to state a malicious prosecution claim, citing Swick v. Liautaud, 169 Ill.2d 504 (1996), in support. The Swick court explained that a nolle prosequi is not a final disposition of a case but "is a procedure which reverts the matter to the same condition which existed before the commencement of the prosecution." Id. at 512-13. The Swick court held that an order of nolle prosequi may be sufficient to indicate innocence "unless the abandonment of is for reasons not indicative of the innocence of the accused." Id. at 513. Contrary to Sanchez's argument, Swick does not hold that a nolle prosequi order is the only method of establishing an accused's innocence for purposes of a civil malicious prosecution claim. See Woodward v. American Family Mut. Ins. Co., 950 F.Supp. 1382, 1387 (N.D.Ill. 1997) (under Swick, charges against malicious prosecution plaintiff must have been dismissed for reasons consistent with innocence).

The Woodward court examined Sutton and Swick, and held that the plaintiff had sufficiently stated a claim for malicious prosecution where she alleged that the charges against her were dropped and this constituted a termination in her favor. Id. Analogously, McDorman has alleged that the traffic citations against her were dismissed and thus "ultimately resolved in [McDorman's] favor." Under Swick, the burden of proving a favorable termination remains with plaintiff; that is, to satisfy the burden of proof at trial, McDorman must prove that the circumstances surrounding the abandonment of the criminal proceedings "compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." 169 Ill.2d at

18

513-14. At this stage in the litigation, however, McDorman has sufficiently alleged that the charges terminated in her favor.

Sanchez also argues that McDorman fails to allege the Sanchez individually commenced judicial proceedings against her, and thus cannot be liable. As discussed above, however, McDorman has sufficiently alleged that Sanchez participated in the post-accident cover-up scheme that resulted in the traffic citations. This is sufficient to state a claim against him for malicious prosecution.

Accordingly, the court denies Sanchez's motion to dismiss Count VI.

Sanchez argues that Count VII (state law conspiracy) should be dismissed absent a viable claim for malicious prosecution or abuse of process. Because plaintiffs have stated a malicious prosecution claim, the court denies Sanchez's motion to dismiss Count VII.

Because some of plaintiffs' federal claims have survived the motions to dismiss, the court continues to exercise supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367. Accordingly, the court denies Sanchez's motion to dismiss Counts VII, IX and X.

**V.     Motion for more definite statement**

Sanchez moves, in the alternative, under Fed. R. Civ. P. 12(e) for a more definite statement. Under Rule 12(e), a more definite statement of facts is necessary only where the complaint "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Rule 12 (e) motions are generally disfavored and should be granted only when the notice function of the complaint is undermined by a pleading that "'is so unintelligible that the movant cannot draft a responsive pleading.'" Remien v. EMC Corp., 2004 WL

2381876, *2 (N.D. Ill. 2004) (quoting <u>United States for Use of Argyle Cut Stone Co. v. Paschen Contractors, Inc.</u>, 664 F. Supp. 298, 303 (N.D. Ill 1987)).

Sanchez fails to argue that a more definite statement is required regarding any particular count. Sanchez argues, without reference to Rule 12(e), that "lumping" defendants violates Rules 8(a) and 9(b). The court agrees that the complaint is poorly drafted, but finds that Sanchez is included in "Defendant Officers," except when specifically excluded. Accordingly, the court denies Sanchez's motion for a more definite statement.

### CONCLUSION

For the reasons stated above, the court grants defendant Michael Sanchez's motion to dismiss Counts XI, XII, and XIII, and dismisses Counts XI, XII, and XIII as to all defendants. The court denies Sanchez's motion to dismiss Counts VI through X of the corrected third amended complaint. The court denies Sanchez's motion for a more definite statement. Sanchez is directed to answer the counts remaining against him on or before July 10, 2006. The matter is set for a hearing on status on July 13, 2006, at 9:00 a.m.

**ENTER:    June 14, 2006**

_____
**Robert W. Gettleman
United States District Judge**