**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KIMBERLY MCDORMAN and ) <br> JOSEPH PIEKIELKO, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> OFFICER KEVIN SMITH, MICHAEL ) <br> SANCHEZ, SGT. DANIEL MCDONALD, ) <br> LT. DENNIS WALSH, KELLY HJELLUM, ) <br> KARI HJELLUM, DONALD LEWIS, MICHAEL ) <br> SHIELDS, CHRIS DINGLE, JOSE TORRES, ) <br> GABRIELLE KRUPA, BRIAN RIVERA and ) <br> CITY OF CHICAGO, ) <br> ) <br> Defendants. ) | No. 05 C 0448 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Kimberly McDorman ("McDorman") and Joseph Piekielko ("Piekielko") allege that McDorman was seriously injured when the car she was driving, which is co-owned by Piekielko, was struck by a vehicle driven by defendant Michael Sanchez ("Sanchez"), an off-duty Chicago Police Department ("CPD") officer. Plaintiffs allege that Sanchez was intoxicated at the time of the accident. Plaintiffs also allege that pursuant to a custom or practice of the CPD, CPD officers responding to the accident conspired to falsify a police report to conceal Sanchez's identity and other information regarding the incident, and wrongfully charged plaintiff with traffic violations.

In a Memorandum Opinion and Order dated June 14, 2006, this court granted in part and denied in part Sanchez's motion to dismiss plaintiff's corrected third-amended complaint. McDorman v. Smith, 2006 WL 1641548 (N.D.Ill. June 14, 2006). This court dismissed Count XI, plaintiffs' equal protection claim under 42 U.S.C. § 1983, as to all defendants. On June 26,

2006, the City of Chicago ("City") filed a motion for clarification, arguing that Count I of the corrected third amended complaint, a claim under Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-91 (1978), must be dismissed in the absence of an underlying constitutional deprivation. On July 7, 2006, plaintiffs' filed a motion under Fed. R. Civ. P. 59(e) to reconsider the dismissal of Count XI, the equal protection claim, or, in the alternative, to grant plaintiffs leave to file an amended complaint under Fed. R. Civ. P. 15(a).

On July 12, 2006, plaintiffs filed a motion for leave to file a fourth amended complaint. On July 13, 2006, the court granted the City's motion to clarify, stating that unless it granted plaintiffs' motion to reconsider the dismissal of the equal protection claim, the Monell claim would be dismissed. On July 27, 2006, defendants Kari and Kelly Hjellum (the "Hjellums") filed a motion to dismiss, arguing that if the federal claims were dismissed, the court should decline to exercise supplemental jurisdiction over the remaining state law claims. On July 28, 2006, defendant Donald Lewis ("Lewis") filed a motion to dismiss joining the Hjellums' motion. On August 1, 2006, this court entered and continued the motions to dismiss.

For the reasons stated below, plaintiffs' motion to file a fourth amended complaint is granted, and plaintiffs' motion to reconsider the dismissal of the equal protection claim is denied as moot. The Hjellums' and Lewis's motions to dismiss are denied as moot because federal claims remain in the fourth amended complaint.

**FACTS**

The facts of this case are discussed at length in this court's two previous opinions. 2006 WL 1641548; McDorman v. Smith, 2005 WL 1869683 (N.D.Ill. Aug. 2, 2005). The factual allegations in the proposed fourth amended complaint are nearly identical to earlier complaints, with a few noteworthy changes that are discussed below.

Briefly stated, plaintiffs allege that McDorman was seriously injured on December 12, 2004, when the car she was driving, which was co-owned by Piekielko, was struck by a car driven by Sanchez. Plaintiffs allege that Sanchez was off-duty and intoxicated at the time of the accident, and that the Hjellums were passengers in the car driven by Sanchez. Defendants Kevin Smith ("Smith"), Sergeant Daniel McDonald ("McDonald"), Lieutenant Dennis Walsh ("Walsh"), Michael Shields ("Shields"), Chris Dingle ("Dingle"), Jose Torres ("Torres"), Gabrielle Krupa ("Krupa"), and Brian Rivera ("Rivera") (collectively, "Responding Officers") are CPD officers who responded to the scene of the accident. Defendant Lewis works for the City as an investigator for the Office of Professional Standards ("OPS").

Plaintiffs allege that the Hjellums knew and the Responding Officers became aware that Sanchez was inebriated, that he was the driver of the vehicle that collided with the car driven by McDorman, and that he was at fault for the collision. Plaintiffs allege that all of the individual defendants conspired to conceal these facts by generating a false police report, issuing two citations to McDorman, which were subsequently dismissed, providing false information, and covering up Sanchez's conduct. Plaintiffs allege that the CPD officers acted pursuant to a "code of silence" between CPD officers "so as to obstruct the legal process, to wit, to prevent honest information from coming forward relative to acts of misconduct." Plaintiffs allege a CPD

3

custom and/or practice of withholding and falsifying information in police reports to protect fellow CPD officers, and that this practice is facilitated by the lack of legitimate investigations into misconduct by CPD officers by OPS investigators including Lewis.

## **DISCUSSION**

The decision to grant a Rule 15(a) motion for leave to file an amended pleading is a matter "purely within the sound discretion of the district court" and shall be freely given when justice so requires. Dubicz v. Commonwealth Edison Co., 377 F.3d 787, 792 (7th Cir. 2004); J.D. Marshall Int'l, Inc. v. Redstart, Inc., 935 F.2d 815, 819 (7th Cir. 1991); Fed. R. Civ. P. 15(a). A district court may deny leave for several reasons including undue delay, bad faith, dilatory motive, undue prejudice to the opposing party due to allowance of the amendment, or futility of amendment. Dubicz, 377 F.3d at 787 (citing Park v. City of Chicago, 297 F.3d 606, 612 (7th Cir. 2002)). Defendants argue that leave to amend should be denied because of plaintiffs' undue delay and dilatory tactics, and futility of the amendment.

**I.     Delay and dilatory tactics**

Defendants argue that they will be prejudiced if plaintiffs are allowed to file a fourth amended complaint because plaintiffs have been dilatory in conducting discovery and have delayed the progress of the case. In support of this argument, defendants state that plaintiffs delayed having their depositions taken until March, 2006, that they have taken only one deposition (of the nurse who treated Sanchez), and that plaintiffs first expressed interest in scheduling the depositions of paramedics on July 17, 2006, after plaintiffs filed their motions to reconsider and for leave to amend again. Defendants also assert that plaintiffs have engaged in discovery "gamesmanship" by filing multiple discovery motions to prejudice the court against

4

defendants. Plaintiffs respond that much of the delay is due to defendants' attempts to stymie plaintiffs' discovery by withholding documents and information, which has required plaintiffs to file five motions to compel and to put off scheduling depositions. The court need not, and will not, referee the parties' discovery disputes, which are being handled ably by Magistrate Judge Michael Mason. A brief review of the extensive docket before Judge Mason, however, indicates that the aggressive discovery motion practice and delay tactics appear to run both ways, and that Judge Mason has found at times that defendants had been less than forthcoming about producing certain information, which necessitated additional motion practice and slowed plaintiffs' discovery.

Defendants also assert that plaintiffs' responses to interrogatories have been insufficient and improper, including that they are based on inferences, hearsay within hearsay, and plaintiffs' counsel's personal knowledge, and that plaintiffs have failed to identify a sufficient factual basis of their allegations or witnesses with personal knowledge to support their claims. Plaintiffs, of course, contest this description of their discovery efforts and the factual basis for their claims, and argue that their factual support is not relevant to the motion to amend.

Many of plaintiffs' interrogatory responses are indeed confusing, improper, and incomplete. Defendants are correct that to the extent that plaintiffs' interrogatory responses avoid answering interrogatories directly by relying instead on the personal knowledge of plaintiffs' counsel, plaintiffs' counsel has put himself at risk of becoming a witness in this case. Defendants, however, have not noticed plaintiffs' counsel's deposition or moved to disqualify him, and a generous reading of the interrogatory responses suggests that plaintiffs were attempting to highlight other cases in this district involving similar police misconduct, which is

appropriate. As stated above, discovery disputes are Judge Mason's province, at least initially, and there are no appeals of Judge Mason's decisions currently pending before this court.

Defendants provide no support for their suggestion that deficient discovery responses are grounds to deny a motion to amend, and most of defendants' discussion of this issue is in the fact section of their brief, perhaps because they recognize that these issues are largely irrelevant to the pending motion. Because of the extended pleading period in this case, more discovery has been conducted than typical at the motion to amend stage. Nevertheless, opposing a motion to amend is not the proper venue to challenge the merits of plaintiffs' claims, including the sufficiency and admissibility of their evidence. Defendants will have ample opportunity to attack plaintiffs' allegedly shaky factual support on a motion for summary judgment or at trial, after the case has moved beyond the pleading stage and the parties are at issue.

The court is not unsympathetic to defendants' frustration with plaintiffs' ever-evolving pleadings and theories of the case, which have spawned multiple sets of briefs and rulings, and have left a nearly two-year-old case stalled at the pleading stage. In addition to being exceedingly hard to pin down, plaintiffs have added to the uncertainty by perpetuating several pleading problems, despite receiving encouragement for clarity from the court. For example, the court has noted in each of its previous opinions that plaintiffs' complaint created confusion by failing to properly identify Sanchez and by imprecisely lumping Sanchez with the on-duty officers at the scene. 2006 WL 1641548, at *1 n.6; 2005 WL 1869683, at *3. Remarkably, plaintiffs have repeated nearly identical, flawed allegations in each successive complaint, including the proposed fourth amended complaint. Similarly, the proposed fourth amended complaint continues to allege violations of the Fourth Amendment in the Monell claim (Count I).

Because plaintiffs' Fourth Amendment claim was dismissed by the court, 2005 WL 1869683, the court strikes all reference to the Fourth Amendment from the fourth amended complaint. Plaintiffs' continued failure to carefully read and apply this court's opinions, and to review their pleadings, is unacceptable, and has caused unnecessary work for defendants and the court.

Although plaintiffs' somewhat clumsy and shifting pleadings have no doubt contributed to the slow progression of the instant case, defendants shoulder a portion of the blame for the discovery delays they caused and for failing to initially attack plaintiffs' complaint fully and comprehensively. In addition, "[d]elay, standing alone, may prove an insufficient ground to warrant denial of leave to amend the complaint; rather, 'the degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar filing.'" Park, 297 F.3d at 613 (quoting Doherty v. Davy Songer, Inc., 195 F.3d 919, 927 (7th Cir. 1999).

Significantly, as in Dubicz, in which the Seventh Circuit held that the plaintiff should have been granted leave to amend, the instant case has not progressed beyond the pleading stage. 377 F.3d at 793 n.1. Despite cataloging plaintiffs' alleged discovery infractions and dilatory tactics, defendants do not argue that the delay has caused document or memory loss, or otherwise prejudiced their ability to defend against the claims. See id. at 793 (document and memory loss may contribute to prejudice). There is some truth to defendants' contention that plaintiffs have forced them to "fight[] windmills" by constantly altering their allegations and their arguments, and plaintiffs' prosecution of the case thus far has been inefficient and may ultimately exhaust the court's patience. At this stage, however, the repeated amendments have not altered the

gravamen of plaintiffs' claims so as to prejudice defendants' ability to defend, and the alleged discovery delays are not sufficient to deny the motion to amend.

**II.     Futility**

Defendants next argue that plaintiffs should not be given leave to amend because amendment is futile. "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com'n, 377 F.3d 682, 687 (7th Cir. 2004). Defendants assert that plaintiffs' fourth amended complaint is deficient because: (1) plaintiffs deleted the allegation that the Responding Officers were acting under the color of law; and (2) plaintiffs' "class of one" equal protection cause of action fails to state a claim. For the reasons discussed below, that court finds that plaintiffs' amendment is not futile.

**A.     Color of law**

Counts I and XI of the proposed fourth amended complaint allege claims under 42 U.S.C. § 1983, which creates a federal cause of action for "the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution or laws of the United States." 42 U.S.C. § 1983. In its August 2, 2005, opinion, this court dismissed Count I of the first amended complaint, which alleged constitutional violations by Sanchez, because plaintiff McDorman[1] failed to allege that Sanchez was acting under color of law and failed to respond to defendants' argument that Sanchez was off-duty. 2005 WL 1869683, at *3. In its June 15, 2006, opinion this court read the corrected third amended complaint liberally to include Sanchez

---

[1]Piekielko was added as a plaintiff in the second amended complaint.

as one of the "Defendant Officers," whom plaintiffs alleged in the corrected third amended complaint were acting under color of state law. 2006 WL 1641548, at *1 n.6. The proposed fourth amended complaint fails to allege that any of the defendants were acting under color of state law. Plaintiffs do not attempt to explain their puzzling choice to delete this language. Instead, plaintiffs assert, without citing supporting authority, that they need not plead color of law. Plaintiffs also argue that their allegations that the "officers were on duty and duly appointed officers for the City of Chicago" are sufficient, again without citing any supporting authority.

In spite of plaintiffs' feeble argument, they have sufficiently alleged that the individual defendants were acting under color of state law. Recent Seventh Circuit caselaw, which neither party cites, has emphasized that allegations are viewed liberally under federal notice pleading and that little is required to state a claim. In Simpson v. Nickel, the Seventh Circuit held, "One pleads 'claims' (which is to say, grievances) rather than legal theories and factual specifics." 450 F.3d 303, 305 (7th Cir. 2006) (citations omitted). Of late, the Seventh Circuit has repeatedly cautioned that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain....' should stop and think: What rule of law *requires* a complaint to contain that allegation?" Id. (quoting Doe v. Smith, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original)). That is, "[a]ny decision declaring 'this complaint is deficient because it does not allege X' is a candidate for summary reversal, unless X is on the list

9

in Fed. R. Civ. P. 9(b)[2]." Id. (quoting Kolupa v. Roselle Park District, 438 F.3d 713, 715 (7th Cir. 2006).

With such emphatic reminders from the Seventh Circuit, and no attempt by defendants to address the recent precedent, the court cannot hold that plaintiffs have failed to allege the elements of a § 1983 claim merely because they failed to specifically allege that the individual defendants were "acting under color of state law." The Seventh Circuit has reiterated that there are no magic words required to survive a motion to dismiss. Earlier cases, although not cited by plaintiffs, have also held that a plaintiff need not use the words "under color of law." See, e.g., Rita v. O'Grady, 1989 WL 84567, at *3 (N.D.Ill. July 21, 1989) (citing Geach v. Moynahan, 207 F.2d 714, 716 (7th Cir. 1953)). All a plaintiff is required to do in his complaint is to provide "a short and plain statement showing that [is] entitled to relief, so as to put the defendants on notice of his claims and their basis." McCready v. EBay, Inc., —F.3d —, 2006 WL 1881142, at *3 (7th Cir. 2006) (citations omitted).

In the instant case, plaintiffs assert a § 1983 claim based on the actions of the Responding Officers, who they allege were on-duty CPD officers, Lewis, who they allege participated in the cover-up while working as an investigator for the City's Office of Professional Standards, Sanchez, who they allege was an off-duty CPD officer, and the Hjellums, private citizens whom plaintiffs allege colluded with state actors in the cover-up. As the court noted in its August 2, 2005, opinion, a finding that a defendant acted under of color of state law is not foreclosed by the defendant being off-duty. 2005 WL 1869683, at * 3 n.1 (citing Latuszkin v. City of Chicago,

---

[2]Rule 9(b) provides in pertinent part, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Defendants do not suggest that plaintiffs have failed to properly allege fraud or mistake.

10

250 F.3d 502, 505 (7th Cir. 2001); Garcia v. City of Chicago, 2003 WL 22175618, at *2-3 (N.D.Ill. Sept. 19, 2003)). In addition, a private citizen may become liable under § 1983 by conspiring with a public official to deprive someone of a constitutional right. See Proffitt v. Ridgway, 279 F.3d 503, 507 (7th Cir. 2002) (citing Dennis v. Sparks, 449 U.S. 24, 27-28 (1980)). Plaintiffs have thus alleged facts that would support a finding that the individual defendants were acting under color of law.

Accordingly, the court rejects defendants' argument that plaintiffs' motion to amend is futile because the proposed fourth amended complaint fails to specifically allege that any defendants were acting under color of law.

### B. Class of one equal protection claim

Defendants' final argument is that the proposed amendment is futile because plaintiffs fail to state an equal protection claim. In its June 14, 2006, opinion, this court dismissed the equal protection claim because McDorman failed to allege that she was a member of a protected class. 2006 WL 1641548, at *6-7. For the first time, the proposed fourth amended complaint pleads McDorman's equal protection claim as a "class of one" claim, rather than a traditional equal protection claim based on membership in a particular class, and has altered the complaint accordingly.

The Supreme Court has specifically acknowledged the existence of a class of one basis for an equal protection claim in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curium). In Olech, the plaintiff alleged that the defendant municipality demanded a larger easement from her, and that this excessive demand was motivated by ill will resulting from an earlier, successful lawsuit filed against the defendant by the plaintiff, her husband, and their

neighbors. Id. at 563. Olech recognizes that successful equal protection claims may be brought by a "class of one" where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Id. at 564. Since Olech, the Seventh Circuit has recognized two types of class of one claims. McDonald v. Village of Winnetka, 371 F.3d 992, 1001 (7th Cir. 2004) (the elements of a class of one claim are that: (1) that a plaintiff "has been intentionally treated differently from others similarly situated"; and (2) that "there is no rational basis for the difference in treatment[3] or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant.").

The first type of class of one claim alleges that the differential treatment was the result of intentional, irrational conduct by the defendant. Crowley v. McKinney, 400 F.3d 965, 972 (7th

---

[3]Judge Posner has remarked that "breathtaking vistas of liability are opened up" by the formulation that class of one claims may be based on irrational rather than invidious discrimination. Tuffendsam v. Dearborn County Board of Health, 385 F.3d 1124, 1127 (7th Cir. 2004). Tuffendsam limits such claims by emphasizing that a plaintiff must present evidence of intent, and that an official "intends" a consequence when he acts "because of it rather than in spite of it." Id. The McDonald court also sought to define the outer-boundaries of a class of one claims, noting that, like all equal protection claims, class of one claims are fundamentally claims of discrimination and therefore require evidence that similarly situated individuals were treated differently, rather than simply that the plaintiff was wronged by tortious conduct, which is by its nature a departure from some norm. 371 F.2d at 1009. That is, the similarly situated requirement prevents class of one claims from constitutionalizing all tort law by ensuring that plaintiffs establish discriminatory conduct. Id. Tuffendsam and McDonald were decided on summary judgment, and their limiting language applies only to the factual support for the claim.

Cir. 2005); Nevel v. Village of Schaumburg, 297 F.3d 673, 681 (7th Cir. 2002)[4]. The second category is claims, sometimes called "vindictive action" claims, that allege that the differential treatment was caused by the defendant's "totally illegitimate animus" toward the plaintiff. See Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000) (plaintiff's class of one claim may be based on evidence "that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position.").

Defendants recognize the two categories of claims, and then assert, without explanation, that plaintiffs' allegations "do not fit either standard." The court disagrees. Plaintiffs explicitly allege that defendants "intentionally treated [McDorman] differently than other individuals, similarly situated," and that she was similarly situated "to other individuals involved in vehicular collisions, not involving a Chicago police officer." They allege that police officers and others conspired to cover-up the true facts of a serious automobile collision involving an intoxicated officer. At this stage, the court cannot find that plaintiffs can prove no set of facts that would establish that the individual defendants acted with intentional animus against McDorman or were acting irrationally when they treated McDorman differently than others similarly situated. See

---

[4]Panels of the Seventh Circuit have expressed concern that there "may be conceptual problems with allowing 'class of one' equal protection claims to proceed where the plaintiff alleges 'no rational basis' rather than a 'totally illegitimate animus.'" McDonald, 371 F.3d at 1002 n.3; see also Tuffendsam, 385 F.3d at 1127; Bell v. Duperrault, 367 F.3d 703, 709-10 (7th Cir. 2004) (Posner, J., concurring); Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000) (rejecting the "no rational basis" approach because, "[i]f a merely unexplained difference in police treatment of similar complaints made by different people established a prima facie case of denial of equal protection of the laws, the federal courts would be drawn deep into the local enforcement of petty state and local laws."). These panels, however, acknowledge that they are bound by Olech and Nevel, and the Seventh Circuit continues to endorse both types of claims. See, e.g., McDonald, 371 F.3d at 1002 n.3; Crowley, 400 F.3d at 972 .

Bell v. Sheahan, 2005 WL 1273147, at *2 (N.D.Ill. May 25, 2005) (rejecting motion to dismiss class of one claim where plaintiff alleged a state actor intentionally treated him differently from similarly situated persons, with no rational basis for the differing treatment).

Defendants also argue that plaintiffs' class of one claim "fundamentally undermines" plaintiffs' § 1983 Monell claim, which alleges that defendants acted pursuant to a City practice or custom. According to defendants, plaintiffs' class of one claim alleges that the disparate treatment occurred one time only, and "[i]t is circular to argue that a City policy or custom existed to treat persons in [McDorman's] 'class' differently than others, yet such a class did not exist until the disparate treatment occurred." At first blush, defendants' argument that a class of one claim is in direct tension with a Monell custom or practice claim, which by its nature involves allegations that a widespread custom or practice has affected a group of people, has some logical appeal. Defendants, however, fail to cite any authority in support of their assertion that the two claims are mutually exclusive, and the court is not convinced. To begin with, a plaintiff may plead in the alternative. Fed. R. Civ. P. 8(e)(2). More significantly, defendants' argument misunderstands the nature of a class of one claim. A class of one plaintiff need not be the only victim of the alleged disparate treatment. The Supreme Court recognized as much in Olech, noting that the "class of one" complaint could be read to allege a class of five because the defendant initially demanded a larger easement from plaintiff's neighbors who were involved in the earlier lawsuit, and concluding that "the number of individuals in a class is immaterial for equal protection analysis." 528 U.S. at 564 n*. Similarly, nothing in the class of one line of cases indicates that a plaintiff must be the first victim of the allegedly discriminatory treatment.

14

Defendants cite Anderson v. Village of Oswego, 109 F.Supp.2d 930 (N.D.Ill 2000), in which Magistrate Judge Bobrick rejected the defendants' argument that the plaintiff's assertion that he was a class of one undermined his Monell claim. The plaintiff in Anderson brought a § 1983 equal protection claim against the Village of Oswego. Judge Bobrick noted that the complaint could be read liberally to allege that the plaintiff's alleged deprivation was caused by a person with policymaking authority. Id. at 935. A constitutional injury caused by a person with final policymaking authority is one basis for a Monell claim. McCormick v. City of Chicago, 230 F.3d 319, 324 (7th Cir. 2000) (citing McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995). Noting that Olech and its Seventh Circuit progeny have allowed class of one equal protection claims, and that the plaintiff alleged that he was terminated for vindictive and personal reasons, Judge Bobrick denied the defendant's motion to dismiss. Anderson, 109 F.Supp. at 935.

Defendants correctly point out that Anderson involved a "policymaker" Monell claim while the instant case involves a "custom or practice" Monell claim, which implicates more widespread action affecting more than one person. Defendants fail, however, to cite any cases holding that non-policymaker Monell claims cannot be maintained based on a class of one theory. Plaintiffs, in turn, argue that Anderson does not hold that a custom or practice Monell claim cannot co-exist with a class of one claim, but fail to cite any case that has allowed such claims to co-exist. The court's own research reveals only one other case directly addressing the interplay between Monell and class of one claims, and its discussion is dicta.

In Murphy v. County of McHenry, 2003 WL 1908045, at *1 (N.D.Ill. Apr. 18, 2003), the plaintiff brought a class of one equal protection claim and the defendant argued that it should be

15

dismissed for failure to allege a municipal policy or practice under Monell. The Murphy court, citing Anderson, suggested in dicta that a plaintiff need not state a Monell claim to bring a class of one claim against a municipality. Id. ("there are dozens of cases in every U.S. Court of Appeals, including the Seventh Circuit, brought against municipalities involving 'class of one' allegations without even so much as a whisper about Monell."). In support of this, the Murphy court noted that Olech, the seminal class of one case, does not mention Monell. Id. The court is not convinced by the reasoning in Murphy that Monell is unnecessary to bring a class of one equal protection claim against a municipality, since the Murphy court does not suggest an alternate basis for municipal liability for an unconstitutional custom or practice. Nevertheless, the point is moot in the instant case because plaintiffs have alleged a Monell claim and the court is persuaded that plaintiffs may maintain both their Monell claim and their class of one claim at this stage in the litigation.

For the reasons stated above, the court grants plaintiffs' motion under Rule 15(a) to file a proposed fourth amended complaint.

## CONCLUSION

For the reasons stated above, the court grants plaintiffs' motion for leave to file their fourth amended complaint. The fourth amended complaint is filed instanter. The court denies plaintiffs' motion to reconsider and Lewis's and the Hjellums' motions to dismiss as moot. Defendants are directed to answer that pleading on or before August 31, 2006. This matter is set for a status report September 7, 2006, at 9:00 a.m. The August 22, 2006, status report is cancelled.

**ENTER:** August 11, 2006

_____
**Robert W. Gettleman**
**United States District Judge**